Jasen, J.
(dissenting in part). I cannot accept the majority’s holding today that an attorney who has been entrusted with funds which he knows do not belong to him cannot be held to have committed a larceny when, in violation of a court order, he appropriates such funds to his personal use. Nor do I accept the legal premise upon which the majority bases its decision — that Alfred D’lsernia was not the "owner” of the *160 misappropriated funds within the meaning of subdivision 5 of section 155.00 of the Penal Law, merely because he failed to establish a specific lien upon them.
On April 7, 1975, an order was entered in Surrogate’s Court, Queens County, amending the limited letters of administration of Thomas Gracie, administrator of the estate of Frieda Gracie, allowing him to compromise an action for medical malpractice. The order also provided that "the administrator be permitted to withdraw [from estate funds] and pay out the amount of $2,500 to Alfred L. DTsernia, Esq. representing the fee to which he is entitled as former attorney for the petitioner”. The funds thus withdrawn from the estate eventually fell into the hands of defendant Keeffe, Gracie’s attorney. These funds were withdrawn from the estate and turned over to defendant for one reason and one reason only — to pay them to Alfred DTsernia. As is indisputably clear from the plain language of the court’s order, the moneys withdrawn were not the property of either Gracie or Keeffe. The court merely allowed Gracie, and through him Keeffe, to obtain temporary custody of the fee to which DTsernia, in the words of the court, "is entitled”. Indeed, one can only wonder what clearer language the court could have used to express its intention that these funds, once withdrawn from the estate, should become the property of Alfred DTsernia.
Moreover, this property was not a mere debt owed to DTsernia; it was a specific fund of money which the court decreed belonged to DTsernia and directed payment to him. Thus, this is not a case such as People v Yannett (49 NY2d 296) where merely an inchoate debt was owed. Instead, it involves the larcenous taking of identifiable property, misappropriated by an attorney who had been directed by the court to pay DTsernia $2,500 from the amount authorized to be withdrawn from estate funds.
Had Keeffe merely retained this money in a "special account”, segregating it from funds available for his personal use, perhaps his argument that he merely "delayed” payment would have some validity. It is undisputed, however, that he did not so segregate these funds. He simply took DTsernia’s fee, which he knew did not belong to him, and used it for his own purposes. This is larceny, and has been long recognized as such by the courts of this State. (Cf. Justices of Ct. of Special Sessions of County of N. Y. v People ex rel. Henderson, 90 NY 12.)
*161 The plain language of the present Penal Law also supports this analysis. Subdivision 1 of section 155.05 of the Penal Law defines larceny as follows: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.” The term "owner” is defined in subdivision 5 of section 155.00 of the Penal Law as a "person who has a right to possession * * * superior to that of the taker, obtainer or withholder.” It seems clear that the April 7, 1975 order of the Surrogate’s Court gave DTsernia "a right to possession superior to that of the taker”, Keeffe. This being so, Keeffe’s appropriation of D’lsernia’s fee, for his own personal use, without the permission of either DTsernia or the Surrogate’s Court was a larceny.
Nor does the mere fact that the Legislature failed to adopt a provision of the Model Penal Code which might have more specifically proscribed the instant offense (Model Penal Code, § 223.8) require a holding that defendant’s conduct was not larceny under current law. That provision was intended by the drafters to reach "a class of cases with which the courts have had difficulty because they seem to involve only breach of contract rather than misappropriation of identifiable property belonging to the victim.” (Model Penal Code, § 206.4 [later renumbered § 223.8], Comment, p 80 [Tent Draft No. 2]; emphasis added.) Thus, the Legislature’s failure to enact this provision can have no bearing upon a case such as this where moneys from an identifiable fund of property, belonging to the victim, were misappropriated.
While I disagree with the majority’s holding that defendant, as a matter of law, has committed no larceny, I perceive other errors in the proceedings below which would require reversal. However, these errors would not mandate dismissal of the indictment but would only entitle defendant to a new trial. In light of the majority’s disposition of the case, a discussion of these issues would serve no purpose.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Meyer; Judge Jasen dissents in part and votes to reverse and order a new trial in a separate opinion.
Order reversed, etc.