ARNOLD R. HANSON et al., Individually, and as Copartners under the Firm Name of HANSON & HANSON, Appellants, v. NATIONAL SURETY COMPANY, Respondent.

(Argued May 14, 1931; decided July 15, 1931.)

*Frank H. Hiscock, C. Arthur Levy* and *George C. Levin* for appellants. Plaintiffs' securities were obtained from its messenger by theft or larceny and the transaction came within the meaning of the bond issued by defendant. (*Underwood* v. *Globe Indemnity Co.*, 245 N. Y. 111; *Ocean Accident, etc., Corp.* v. *Old Nat. Bank*, 4 Fed. Rep. [2d] 753; *People* v. *Miller*, 169 N. Y. 339; *Ryan* v. *People*, 79 N. Y. 593; Penal Law, § 1290; *Kean* v. *Maryland Casualty Co.*, 223 N. Y. Supp. 373; 248 N. Y. 534; *International Harvester Co.* v. *Nat. Surety Co.*, 44 Fed. Rep. [2d] 746; *People* v. *Noblett*, 244 N. Y. 355; *Hildebrand* v. *People*, 56 N. Y. 394; *Justices, etc.*, v. *People. ex rel. Henderson*, 90 N. Y. 12; *People* v. *McDonald*, 43 N. Y. 61; *Smith* v. *People*, 53 N. Y. 111; *Bassett* v. *Spofford*, 45 N. Y. 387; *Hickory* v. *United States*, 160 U. S. 408; *Alberty* v. *United States*, 162 U. S. 499.)

*David Rumsey* and *Henry Newton Arnold* for respondent. The company absconded with the securities after plaintiffs' messenger had surrendered possession thereof, wherefore the securities were not stolen while in transit, or from the custody of the messenger. (*Ocean Accident & Guarantee Corp.* v. *Old Nat. Bank*, 4 Fed. Rep. [2d] 753.)

LEHMAN, J. The plaintiffs are a firm of stockbrokers and dealers in securities. They intrusted certificates of stock to a messenger for delivery to Baran & Co., Inc., at its office and place of business, 51 Beaver street, New York city. The messenger delivered the certificates, but upon the condition, evidenced by a written receipt, that title to the certificates should remain in the plaintiffs until payment should have been made therefor. Promptly upon receipt of the stock, Baran & Co., Inc., abandoned its office and its officers absconded with the certificates of stock. The plaintiffs have brought this action to recover the value of the certificates from the defendant company which had issued to the plaintiffs a bond of indemnity, described as a " Broker's Basic Bond."

The defendant's bond was intended to cover loss of property at stipulated places and through stipulated causes. For loss of property outside of plaintiffs' office and certain other specified places the defendant's promise of indemnity is limited to loss " through larceny, whether common law or statutory, embezzlement, robbery, hold-up or theft by any person whomsoever while the property is in transit * * * in the custody of any of the Insured's partners or any of the employees or any messenger temporarily employed, or through negligence on the part of any such employee or messenger having custody of the Property while in transit as aforesaid: such transit risk to begin immediately upon receipt of such Property by the transporting employee or employees or partner or messenger temporarily employed and to end immediately upon delivery thereof at destination." Upon the defendant's motion for judgment on the pleadings, the complaint has been dismissed upon the ground that the securities were not lost by larceny until after they were delivered " at destination."

The defendant expressly waives upon this appeal " any technical defect or inadvertent omission or misstatement of a fact which might be supplied under an amended

pleading." We read the allegations of the complaint in accordance with the construction placed upon them by both parties in their arguments and briefs. The question so presented is narrow. Baran & Co., Inc., agreed to purchase some shares of stock for the sum of $19,300. The plaintiffs' messenger was authorized to deliver temporary possession of the stock to the purchaser, but in accordance with the agreement of the parties and the custom of trade, title to the stock was not to pass to the purchaser until a certified check or cash for the amount of the purchase price was delivered to the messenger. Pursuant to his instructions the messenger delivered the stock to the purchaser, upon the condition evidenced by a written receipt " reserving title to the above securities in the plaintiffs, until payments shall have been made therefor." The defendant does not contend that the allegations of the complaint are insufficient to admit proof of an intention on the part of Baran & Co., Inc., fraudulently to secure possession of the securities without payment, and with intent to convert them to its own use. It says that even assuming that the plaintiffs lost the securities by larceny, the complaint fails to show that the larceny occurred while the securities were in transit and before the transit risk was terminated by " delivery thereof at destination."

In *Underwood* v. *Globe Indemnity Co.* (245 N. Y. 111) this court sustained a right of action under a similar, though not identical, bond of indemnity where a messenger, authorized to deliver securities upon receipt of a certified check, was induced by trick and device to deliver possession upon the receipt of a worthless piece of paper which was fraudulently given the appearance of a certified check. There the messenger was tricked into making a delivery not authorized by his principal. Here the messenger delivered the securities at their destination in accordance with the instructions of the principal. Therefore, it is said, the transit risk was terminated by delivery

of the securities at destination and the loss is excluded from the protection of the indemnity bond.

The problem presented here is not whether the transit of the securities was terminated by delivery at destination, but whether the transit *risk* was terminated before the larceny was complete. Even at common law, " if a party fraudulently obtains possession of goods from the owner with intent at the time to convert them to his own use, and the owner does not part with the title, the offense is larceny." (*Commonwealth* v. *Lannan*, 153 Mass. 287.) (See *People* v. *Noblett*, 244 N. Y. 355.) The original wrongful intent may be inferred from subsequent conduct. (*Commonwealth* v. *Rubin*, 165 Mass. 453.) Here we must assume that both before and at the time when the pretended purchaser obtained possession of the securities he had the fraudulent intent to convert them. Purchase and promise to pay and written receipt with reservation of title to the securities were all parts of a fraudulent device to obtain possession of the securities. The securities, while in the custody of the messenger, were in the possession of the plaintiffs. Possession was obtained from the plaintiffs by larceny. It is immaterial whether the fraud was exercised upon the mind of the messenger, or upon the minds of those directing his actions. In either event the plaintiffs have been deprived of their property by larceny, and that larceny was consummated while the property was in the custody of their messenger, through a delivery obtained fraudulently and with intent to convert the property. It cannot be said that the larceny occurred after the messenger had ended the transit risk by delivery at destination, when that delivery was itself the consummation of a scheme to obtain possession with larcenous intent. The plain intent of the bond was to furnish protection against loss by larceny through a felonious taking of possession from the messenger. Such loss was incurred in this case, as in the *Underwood* case, though there the trick was

practised upon the messenger, while here it was practised upon the messenger's principal, who used the messenger only as an instrument to make a physical delivery of possession. with reservation of title.

The judgment of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs in the Appellate Division and in this court. (See 257 N. Y. 555.)

CARDOZO, Ch. J., POUND, CRANE, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., dissents.

Judgment accordingly.