WILLIAM KOHLER, Appellant, *v.* NATIONAL SURETY CORPORATION, Respondent.

Supreme Court, Appellate Term, First Department, November 8, 1934.

*Alfred Feingold* [*Isidore Abramowitz* of counsel], for the appellant.

*Charles R. McNamme* [*Marion H. West* and *John J. Dempsey* of counsel], for the respondent.

SHIENTAG, J. The defendant on or about January 16, 1934, issued a fraud bond to the plaintiff. It provided, among other things, that the plaintiff be indemnified for loss not exceeding $100 " occasioned by larceny or embezzlement of money, merchandise and personal property owned by the assured, occurring upon the premises * * * committed by any of the assured's employees identified by name as responsible for the loss."

On June 6, 1934, the plaintiff, in his place of business, gave to one Sam Hamilton, an employee, a number of checks indorsed in blank, for the purpose of cashing them at the bank and bringing the money back to his employer. Hamilton left the plaintiff's premises with the checks at nine-five A. M. Within two minutes he cashed the checks, left the bank and absconded with the proceeds, amounting to $186. This was discovered by the employer at nine-fifteen when the employee failed to return. Plaintiff thereupon brought this action on the bond to recover the sum of $100.

While insurance policies which offer protection of this type have been liberally construed, they have for the most part been confined to the commonly understood meaning of such terms as " larceny " or " embezzelement." For example, " theft " will cover all situations now generally known as " larceny," but not statutory crimes of which intent is not an element. (*Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303.) It is not necessary to prove a technical crime beyond a reasonable doubt to entitle an assured to recover. Recovery may be had even in a situation where conflicting inferences are possible so that a jury would absolve a defendant of felonious intent. Thus, it has been held that " a furtive misuse " by one " for his own benefit of moneys placed in his custody for the use of some one else is embezzlement or larceny, or conduct substantially equivalent thereto, at least when the question at issue is one of civil liability." (*Genesee Wesleyan Seminary* v. *U. S. F. & G. Co.*, 247 N. Y. 52, 57.) Facts there must be, however, from which an inference may be drawn of intent to misuse or steal in order for the assured to be entitled to relief under the policy.

In this case, therefore, two questions are presented: (1) Was there a theft, that is, a loss by larceny or embezzlement committed by an employee of the assured? Both parties have assumed that such a loss did occur, and it is unnecessary, therefore, for us to go into that question. (2) Did the larceny or embezzlement occur upon the " premises " of the assured? That is the interesting question raised on this appeal. It would serve no useful purpose to trace the historical distinctions at common law between larceny and embezzlement. Some jurisdictions have retained those dis-

tinctions in whole or in part. They have largely, if not entirely, been done away with by statute in this State. (Penal Law, § 1290.) Here the term "larceny" is all inclusive. It is well-settled law that checks may be the subject of larceny. (*People* v. *Lovejoy*, 37 App. Div. 52.)

As we see it, the question as to whether or not the larceny was committed on the premises depends upon the intent of the employee when he received the checks to cash. If at the time he was given the custody of checks or before he left the premises he had the felonious intent to misappropriate them or their proceeds to his own use, the crime then and there took place. The short lapse of time between the employee's departure from the premises, his receipt of the cash and his disappearance, is sufficient to permit a jury to infer that he had formed an intent to steal the checks either at the time he received them or while still on the premises. It should be borne in mind that from the facts as we have them in this record, two minutes elapsed from the time the employee received the checks on the premises of his employer until he cashed them at the bank. The finding of criminal intent from circumstantial facts has long been within the province of the jury. " The $20 gold coin was intrusted to the relator for the single and specific purpose of having it changed into other money, to be returned to the prosecutor. The relator had no property or interest in the coin, and the prosecutor never intended to part with his property therein. The relator left his restaurant with the coin under the pretense of obtaining change, and immediately gambled it away and did not return. These facts warranted the jury in finding that, when he left the presence of the prosecutor, he took the coin with him with the intent to steal it. This * * * justified his conviction for larceny." (*Justices. etc.*, v. *People ex rel. Henderson*, 90 N. Y. 12, 14.)

In *Commonwealth* v. *Rubin* (165 Mass. 453, 456; 43 N. E. 200), HOLMES, J., said: " The conversion followed hard upon the receipt, * * * and the inference is not unnatural that the intent existed from the beginning, as it is proved to have existed a very short time afterwards."

" The original wrongful intent may be inferred from subsequent conduct." (*Hanson* v. *National Surety Co.*, 257 N. Y. 216, 220.)

It is the taking with felonious intent which is decisive as to larceny. Thus, in *Reg.* v. *Janson* (4 Cox Crim. L. Cas. 82) the defendant hired a horse and gig with the felonious intention of converting them to his own use and afterwards offered them for sale, but no sale took place. Mr. Justice COLERIDGE, after consulting PARKE,

B., held that if goods are delivered to a person for hire and he takes them *animo furandi*, he is guilty of larceny, although no actual conversion of them by sale or otherwise is proved.

It appears that the assured, in answering a questionnaire submitted by the insurer, after reciting the facts in connection with the loss, states in response to one of the questions that the embezzlement did not occur upon the premises. This, it is urged, is conclusive and correctly states the inference to be drawn from the facts. The question called for a legal conclusion and asked for an opinion which the plaintiff as a layman was hardly qualified to give. It called for a complete understanding not alone of the terms of the policy but of the law of larceny and embezzlement. At best it is merely evidence on the question of fact which the jury must decide.

In the light of the foregoing it is clear that a triable issue of fact is presented and that neither party is entitled to summary judgment.

The order granting summary judgment in favor of the defendant is reversed, and the order denying the plaintiff's motion for summary judgment is affirmed.

All concur; present, LYDON, CALLAHAN and SHIENTAG, JJ.